# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

DONNA M. CASEY,                     §
                                    §
     *Plaintiff,*                 §
                                    §
*versus*                            §     CIVIL ACTION NO. 7:13-947
                                    §
CAROLYN W. COLVIN,                  §
Acting Commissioner of              §
Social Security,                    §
                                    §
     *Defendant.*                 §

## REPORT AND RECOMMENDATION

Donna M. Casey ("Casey") seeks review of an adverse decision on her applications for disability insurance benefits and supplemental security income available under the Social Security Act.[1] *See* 423(d)(1)(A), 1382c(a)(3).

## I.  Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g).

---

[1]    Disability Insurance, authorized by Title II of the Social Security Act and funded by social security taxes, provides income to insured individuals forced into involuntary, premature retirement by reason of disability. *See* 42 U.S.C. § 423(a); *see also Mathews v. Castro*, 429 U.S. 181, 186 (1976).

Supplemental Security Income, authorized by Title XVI of the Social Security Act and funded by general tax revenues, provides an additional resource to assure that disabled individuals' incomes do not fall below the poverty line. *See* Social Security Administration, Social Security Handbook, § 2100 (14th ed. 2001). Supplemental Security Income is available to persons of all ages.

Courts cannot retry factual issues *de novo* or substitute their interpretations of administrative records for the Commissioner's when substantial evidence supports the Commissioner's decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Neither can they overturn the Commissioner's administrative rulings because they would have reached different conclusions had the matters come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012) (summary order). Further, reviewing courts also must take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all errors and defects that do not affect any party's substantial rights").

## II.  Background

Casey, born in 1974, attended regular education classes and dropped out of school in 11th grade when she became pregnant. (T. 399). Thereafter, she has tried unsuccessfully to obtain a GED[2] multiple times, but recently "passed" the GED pre-test. (T. 43, 399). After leaving school, she worked in a variety of jobs including bus monitor, van attendant, ambulance driver, childcare giver, kitchen helper, and nurse's aide. (T. 252, 259, 287).

Casey developed asthma in the 1980's. (T. 423). Despite that condition, she began smoking cigarettes in 1994, and continued to smoke a pack a day

---

[2]     General Educational Development ("GED") tests are a group of subject tests which, when passed, certify that the test taker has high school-level academic skills. Generally, States award a Certificate of High School Equivalency or similarly titled credential to persons who meet the passing score requirements.

during times relevant to this case. (*Id*.). In late 2000's, she also smoked marijuana for a few months. (*Id*.). She takes medication, including a nebulizer, inhalers, and an oxygen concentrator. She has fairly frequent hospitalizations for asthma and shortness of breath and desaturates badly. (T. 422, 425).

In April 2010, Casey's major physical complaint was asthma and sleep apnea. (T. 422-23, 425). She also was obese (5'2" and 230 pounds), but stated that she has no obesity-related limitations. (T. 422, 424).

In 2011, Casey sought treatment for chronic pain from cervical disc herniation at C5-6 and C6-7, left rotator cuff tear, and left ulnar as well as median nerve compressions with left carpal tunnel release. (T. 555). As a result of these abnormalities, Casey has trouble dressing herself, especially when it comes to buttoning her blouse. (*Id*.). She also has clumsiness in the left hand, dropping coffee and not being able to do the dishes or do laundry. (*Id*.).

Casey has a history of physical and sexual abuse including a violent father, being molested in 10th grade, being raped at age 21, having a husband who was physically abusive to her and molested her children, as well as other instances she cannot fully recall. (T. 326-27, 366, 399). She suffers flashbacks from the abuse. (T. 366, 704). In 2008, she began cutting herself and was referred to a psychiatric clinic for therapy. (T. 366). She dropped out of treatment, alleging the medicine prescribed made her groggy. (T. 366).

She has a variety of mental issues including major depressive disorder, post traumatic stress disorder, learning disorder, borderline intellectual functioning, personality disorder with borderline features, and anxiety with chest pain. (T. 401, 425). She suffers from panic attacks approximately twice a week. (T. 399). She takes medication to help stablilize her mood. (T. 590).

### III.  Application for Social Security Disability Benefits

In November, 2009, at age 35, Casey applied for disability insurance benefits and supplemental security income claiming disability due to "depression, anxiety, and mental issues ." (T. 251).  Casey alleged that she last worked in October, 2009.  (*Id.*).   At the time of filing, Casey lived with her boyfriend and three children ages 13, 15, and 18.   (T. 423).

### IV.  Commissioner's Decision

After initial administrative denials, Casey's application was assigned to an administrative law judge, Edward I. Pitts ("ALJ Pitts"), who conducted an evidentiary hearing.  (T. 14, 37-111).  Casey, represented by counsel, was present, and testified. (*Id.*).  Also testifying was an impartial vocational expert, Karen Simone, MS, CRC,[3] and Casey's fiancee, Stephen Liebfred.  (T. 82-100, 101-107).  ALJ Pitts also received into evidence Casey's medical treatment records and forensic reports from treating sources and state agency consultants, including a consultative examining psychologist (Richard W. Williams, Ph.D.),[4] a nonexamining psychologist (R. Petro, Ph.D.),[5] and a consultative internal medicine examiner (Roberto Rivera, M.D.).[6]

ALJ Pitts found that Casey has several severe impairments: degenerative disc disease of the cervical spine, chronic obstructive pulmonary disease/asthma,

---

[3]     Karen Simone holds a Bachelor of Arts degree in public justice and a Masters of Science in rehabilitation counseling and is a certified rehabilitation counselor.  (T. 217).

[4]     Dr. Williams, on April 23, 2010, conducted a psychological evaluation of Casey.  (T. 399-401).

[5]     On April 29, 2010, Dr. Petro reviewed Casey's longitudinal mental health treatment records and completed a Psychiatric Review Technique Form as well as a Mental Residual Functional Capacity Assessment.  (T. 402-17, 418-21).

[6]     Dr. Rivera conducted an internal medicine examination on April 29, 2010.  (T. 422-26).

bipolar disorder, borderline intellectual functioning, and obesity. (T. 14).[7]  He next found that none of Casey's impairments was so severe as to be presumptively disabling.[8]  (T. 18-22).  He assessed Casey's "residual functional capacity,"[9] and found that, despite her severe impairments, Casey can still perform a limited range of unskilled work at the light exertional level:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that the claimant has only occasional use of her non-dominant left arm for overhead work, and she needs to avoid concentrated exposure to respiratory irritants.  I further find that the claimant is limited to unskilled work, non-production work, and non-supervisory work.  I additionally find that the claimant can have frequent contact with co-workers and supervisors, but no contact with the general public as part of her job duties.

(T. 22).

ALJ Pitts found that the requirements of Casey's past relevant work exceed her current residual functional capacity.  (T. 28, 86-87).  However, he determined that Casey can still engage in alternative, available work.  (T. 28-30).  He credited VE Simone's testimony that a person with Casey's age, education, work experience and residual functional capacity can perform

---

[7]     ALJ Pitts declined found no evidence supporting existence of any significant limitations due to any other psychological disorder, sleep apnea, torn left rotator cuff, or any other condition.  (T. 17).  He determined that Casey's left arm and shoulder symptoms related to her degenerative disc disease of the neck, and her limited use of the left arm was considered under that diagnosis.  (*Id.*).

[8]     *See* discussion of the Commissioner's "Listings" of presumptively-disabling impairments in Section VI., *infra*.

[9]     "Residual functional capacity" refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain.  *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *2 (SSA July 2, 1996).

representative light, unskilled occupations of "laundry worker," "ironer," and "office helper." (T. 29-30, 87, 90-92).

Based on VE Simone's testimony and the framework of Medical-Vocational Rule 202.18,[10] ALJ Pitts concluded that a finding of "not disabled" was appropriate. (T. 30). Casey's application was denied. (*Id.*).

The Appeals Council denied Casey's request to review. (T. 1-7). Casey then instituted this proceeding.

## V. Points of Alleged Error

Casey proffers two alleged errors:

1. The Commissioner erroneously failed to find Plaintiff's impairments or combination of impairments meets or medically equals the severity of one of the listed impairments; and

2. The Commissioner failed to properly calculate Plaintiff's residual functional capacity.

(Dkt. No. 13, p. 17, 20). In the first point, Casey argues that ALJ Pitts erred by finding that she is not presumptively disabled due to mental retardation. (Dkt. No. 13, p. 17-20). In her second point, Casey contends that ALJ Pitts's residual functional capacity fails to account for all of her mental impairments, specifically limitations in interacting and working with male coworkers and supervisors. (Dkt. No. 13, pp. 20-23).

---

[10]    *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. The Medical-Vocational Guidelines are a matrix of general findings – established by rule – as to whether work exists in the national economy that a person can perform. They "take into account a claimant's residual functional capacity, as well as her age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (summary order) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the grids are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or non-exertional limitations. *Stebbins v. Astrue*, No. No. 06-CV-0610-A (F), 2008 WL 4855558, at *16 (W.D.N.Y. June 19, 2008) (citing *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981)).

# VI.  Listing 12.05(C)

The Commissioner prescribes by regulation a five-step sequential evaluation procedure which is approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act.[11] When evaluations reach Step 3, administrative law judges determine whether claimants' impairments or combination of impairments are of such severity as to meet or equal the Commissioner's "Listings" of presumptively-disabling impairments.[12] *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, and if the impairment is of sufficient duration, they generally are found to be disabled, and their applications are granted. *See id.* If not, evaluations proceed to the subsequent sequential steps. *Koch v. Colvin,* 570 Fed. App'x 99, 101 (2d Cir. 2014) (summary order).

ALJ Pitts evaluated Casey's bipolar disorder under Listing 12.04 (Affective Disorders). He evaluated Casey's borderline intellectual functioning under Listing 12.05 (Mental Retardation).[13] He concluded that neither of Casey's mental impairments is so severe as to satisfy Listings requirements.

---

[11]    *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

[12]    The Commissioner publishes a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). Listed impairments are presumptively disabling. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d).

[13]    Effective September 3, 2013, the Commissioner changed the name of Listing 12.05 from "Mental Retardation" to "Intellectual Disability." References, herein, will be to the terminology in place at the time of ALJ Pitts's decision in May 2012.

Casey does not complain of ALJ Pitts's Listing 12.04 analysis regarding bipolar disorder. She also does not object to ALJ Pitts's election to evaluate her intellectual impairment under Listing 12.05. She contends, however, that ALJ Pitts erred in finding that her impairment constitutes borderline intellectual functioning (instead of mental retardation), and she further contends that her intellectual impairment satisfies all mental retardation requirements in Listing 12.05(C).

## A.    Listing Requirements

Listing 12.05, as it existed when Casey's application was decided, is quoted verbatim and in relevant part in the note below.[14] To satisfy Listing 12.05, a claimant must satisfy a *diagnostic description* contained in the introductory paragraph, in addition to *severity criteria* in any one of the four subparagraphs that follow. *Douglass v. Astrue*, 496 Fed. App'x 154, 157 (2d Cir. 2012) (summary order); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A) ("If your impairment satisfied the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets

---

[14]      12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. . . .;
Or
B. . . .;
Or
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
Or
D. . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2012).

[Listing 12.05].").   Specifically, claimants must make a threshold showing that they suffer from "significantly subaverage general intellectual functioning with deficits in adaptive functioning" initially manifested prior to age 22.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2012); *see also Burnette v. Colvin*, 564 Fed. App'x 605, 607 (2d Cir. 2014) (summary order); *Talavera v. Astrue*, 697 F.3d 145, 152–53 (2d Cir. 2012).   Next, they "must then demonstrate '[t]he required level of severity for this disorder' under Listing 12.05(A), (B), (C), or (D)." *Burnette*, 564 Fed. App'x at 607 (quoting *Talavera*, 697 F.3d at 152).[15]

## B.   *Casey's Challenge*

The *aim* of Casey's first point of error is unambiguous:

> Had the ALJ analyzed the evidence in conjunction with the requirements of the Appendix 1 listings, he could have (and should have) immediately ended his analysis with a favorable decision.  The ALJ's failure to find Plaintiff's intellectual deficit meets or equals the severity contemplated in listing 12.05(C) requires that his unfavorable decision be reversed or remanded for further consideration.

Dkt. No. 13, p. 20.  Unfortunately, the *grounds* supporting that argument are diffuse, making adversarial response and judicial appraisal arduous.   Fairly construed, Casey appears to argue that ALJ Pitts failed to apply correct principles of law in his analysis of Listing 12.05, and that his finding that Casey

---

[15]      A statement of <u>all</u> requisite elements of Listing 12.05(C) was articulated in *Carrube v. Astrue* as follows:

> [T]o meet Listing 12.05(C) Plaintiff must show (1) below average intellectual functioning with adaptive functioning deficits manifested before age 22 and continuing during the claim period, (2) a valid IQ score of 60 through 70, and (3) an impairment other than . . . low IQ that imposes an additional and significant work-related limitation of functioning.

*Carrube v. Astrue*, 3:08-CV-0830 (FJS/VEB), 2009 WL 6527504, at *3 (N.D.N.Y. Dec. 2, 2009) (internal quotations omitted).  The text above does not delineate or discuss elements 2 or 3 because they are not in dispute or relevant to Casey's point of error.

failed to show adaptive-functioning deficits is unsupported by substantial evidence.

With respect to the legal objection, Casey asserts that ALJ Pitts unfairly imported additional requirements into the Listing. Specifically, Casey argues:

> [T]he ALJ has added the requirement that claimant needed to satisfy him that her condition crossed some nebulous threshold regarding deficits in adaptive functioning. Such is clearly beyond the intent of the listing.

Dkt. No. 13, pp. 18-19. Casey acknowledges the introductory paragraph's reference to "deficits in adaptive functioning initially manifested during the developmental period," but argues that later language "clarifies that the required level of severity 'is met when the requirements in A, B, C, or D are satisfied.'" Dkt. No. 13, p. 18. Thus, in Casey's view, ALJ Pitts erred in requiring proof beyond an intelligence quotient (IQ) deficit and inability to obtain a GED despite several attempts to satisfy the adaptive-function-deficit element of Listing 12.05.

With respect to the evidentiary objection, Casey argues:

> Here, Plaintiff has deficits in adaptive functioning as evidenced by her compulsion to cut, scratch, and 'pick' at her skin; her inability to go out in crowds due to anxiety and flashbacks when seeing a male that resembles her brother; inability to be alone due to anxiety; paranoia regarding people talking about her; inability to relate to others inability respond appropriately to supervision and co-workers, especially male; attention and memory issues; tendency to make bad decisions; and lack of academic skills.

Dkt. No. 13, pp. 19-20. Given this evidence, Casey concludes that ALJ Pitts erred when finding that she did not show deficits in adaptive functioning.

## C. *Discussion and Application*

Casey's suggestion that the language of Listing 12.05 "clarifies" that the essential elements of Listing 12.05 are only severity criteria in subparagraphs

(A) – (D) must be rejected. Cases cited *supra* in Section VI.*A* unequivocally establish that claimants must show that their mental disorder satisfies both the diagnostic description of mental retardation (which includes deficits in adaptive functioning initially manifested prior to age 22) *and* the severity criteria in one of the subparagraphs. Consequently, a reviewing court must reject Casey's assertion that ALJ Pitts unfairly imported additional legal requirements into the Listing.

Casey's characterization of this essential element as "nebulous" has some appeal, as the Commissioner has not by regulation or internal ruling defined "deficits in adaptive functioning." Courts, nonetheless, have fashioned a working definition. "Deficits in adaptive functioning denote 'an inability to cope with the challenges of ordinary everyday life.'" *McNally v. Commissioner of Soc. Sec., No.* 5:14–CV–00076 (MAD/ATB), 2015 WL 3621437, *10-11 (N.D.N.Y. June 9, 2015) (MAD/ATM) (quoting *Carrube v. Astrue*, 3:08–CV–830 (FJS/VEB), 2009 WL 6527504, at *4 (N.D.N.Y. Dec. 2, 2009) (citation omitted), *report and recommendation adopted*, 2010 WL 2178499 (N.D.N.Y. May 28, 2010). "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *Id*. (citation omitted).

To meet this adaptive-functioning-deficit requirement, however, one need not demonstrate a complete lack of adaptive functioning:

> [T]he plain language of the regulations does not require a complete lack of adaptive functioning . . . . *see generally Rivera v. Schweiker*, 717 F.2d 719, 722 (2d Cir. 1983) ("The claimant need not demonstrate that he is completely helpless or totally disabled."). Indeed, the American Psychiatric Association's criteria for mental retardation require deficits or impairments in adaptive functioning in only two out of eleven areas. DSM–IV 49 (4th ed. 2000) (listing areas of adaptive functioning as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety). Although the Commissioner has not adopted

the DSM–IV criteria, . . . the term "deficits in adaptive functioning" must allow for adaptive functioning in some areas, as long as deficits are present in other areas of functioning.

*Barton v. Astrue*, 3:08–CV–810 (FJS/VEB), 2009 WL 5067526, at *8 (N.D.N.Y. Dec. 16, 2009) (some citations omitted).

ALJ Pitts applied the Diagnostic and Statistical Manual's treatment of adaptive functioning deficits, and explicitly recognized the limited two-skill-area requirement. (T. 19). Hence, there is no basis for the court to conclude that ALJ Pitts erred by applying incorrect principles of law.[16]

Turning to Casey's evidentiary objection, the undersigned assumes *arguendo* that the adaptive-functioning evidence produced and relied on by Casey (summarized earlier), if accepted, would show that she had significant limitations in adaptive functioning in at least two skill areas delineated in the American Psychiatric Society's Diagnostic and Statistical Manual of Mental Disorders. Nonetheless, "whether there is substantial evidence supporting the [claimant]'s view is not the question." *Bonet ex rel. T.B. v. Colvin*, 523 Fed. App'x

---

[16] The Commissioner's brief perceives Casey's argument to suggest that ALJ Pitts erred in his adaptive functioning analysis by finding that Casey did not also show <u>current</u> deficits in adaptive functioning. The Commissioner views Casey's argument to be that ALJ Pitts was required to focus entirely on whether the evidence showed deficits in adaptive functioning <u>prior to age 22</u>. Dkt. No. 15, p. 5.

The Commissioner's brief then proceeds to argue that this supposed error would be harmless because there is an independent basis for ALJ Pitts's finding, *viz.*, ALJ Pitts never found that the evidence supported a mental retardation finding prior to age 22. Dkt. No. 15, pp. 5-6.

This report does not address the Commissioner's argument on this point because the Commissioner, perhaps understandably, misperceived Casey's fuzzy argument on the point. Casey's brief advocates that proof of adaptive functioning deficits must continue "during the claim period," and she cites evidence which she argues as confirming "that her cognitive deficits have endured." Dkt. No. 13, pp. 17-18.

58, 59 (2d Cir. 2013) (summary order).  Rather, the court "must decide whether substantial evidence supports *the ALJ's decision*."  *Id*. (emphasis in original).[17]

When concluding that Casey's evidence did not meet the applicable standards, ALJ Pitts found:

> [T]he claimant does not have the deficits in adaptive functioning that are required to support a diagnosis of mental retardation.  The claimant lives with her three children, two of whom are still in school, and she has a fiancé (Hearing Testimony).  She has also worked at substantial gainful activity levels, including jobs as a certified home health aide, certified nursing assistant, and ambulance driver (Hearing Testimony; Exhibits 5D, 11F).  In addition, she has received training as an emergency medical technician and has carried a commercial driver's license (Hearing Testimony).  Moreover, she can take care of her personal hygiene, cook, clean, do laundry, shop, perform child care for her three children, go out to camp, shower, bathe, dress herself, vacuum, sweep, wash windows, use a computer, visit with relatives, drive, run errands, go out to appointments, and care for pets (Hearing Testimony; Exhibits 4E, 11F, 15F).

(T. 19).  All of these findings are supported by record evidence.

In a recent Second Circuit case, almost identical evidence was held to be substantial evidence supporting a Commissioner's finding that a claimant did not prove deficits in adaptive functioning.  *See Burnette*, 564 Fed. App'x at 607-08.  Moreover, additional evidence in the remainder of the record buttresses ALJ Pitts's conclusion.  Casey did not attend special education classes in school. (T. 257).  She failed to graduate from high school not because of intellectual deficits but because she had a baby in her junior year.  (T. 43, 399).  She attributed her inability to obtain her GED due to panic attacks, not intellectual

---

[17]    "Substantial Evidence" is a term of art meaning less than a "preponderance" (usual standard in civil cases), but "more than a mere scintilla," or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 378, 401 (1978); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

difficulties, and further acknowledged that she recently successfully "passed" the GED pre-test. (T. 399).

"It is the province of the administrative law judge to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'" *McNally v. Commissioner of Soc. Sec.*, 2015 WL 3621437, at *12 (quoting *Galiotti v. Astrue*, 266 Fed. App'x 66, 67 (2d Cir. 2008) (summary order) (citing *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002)). In this case, ALJ Pitts properly considered the totality of the record evidence, and concluded that the evidence quoted above outweighed Casey's evidence to the contrary. Since his determination that Casey did not demonstrate the requisite deficits in adaptive functioning was supported by substantial evidence, the court has no basis to overturn ALJ Pitts's resolution of conflicts in the evidence.

## VII. Residual Functional Capacity

When (as happened here) administrative law judges find at Step 3 that claimants' impairments, although severe, do not meet or equal requirements of the Commissioner's listings of presumptively-disabling impairments, sequential evaluation next requires a determination of residual functional capacity.[18] That determination is a predicate for remaining sequential findings. Administrative law judges then determine at Step 4 whether claimants can still perform their *past* relevant work in light of their *current* residual functional capacity. If not, they determine at Step 5 whether claimants' current residual functional capacity permits them to perform alternative, available work.[19]

---

[18]     *See* n. 9, *supra.*

[19]     Under sequential analysis, the burden shifts to the Commissioner at Step 5 to either award benefits or show, after considering age, education, work experience, and residual functional capacity, that jobs exist in significant numbers in the national economy that a claimant can perform. *See* 20 C.F.R. §§ 404.1560(c), 416.960(c); *see also Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

*A.    Governing Legal Standards*

When assessing residual functional capacity, administrative law judges must consider and include all limiting effects of all impairments, even those that are not severe. *See* 20 C.F.R. §§ 1545(a), (e), 416.945(a), (e). This is especially important at Step 5 where administrative law judges often rely on testimony from vocational experts regarding existence of jobs in the national economy and whether claimants can perform any of those jobs given their functional limitations. *See* 20 C.F.R. §§ 404.1560, 416 960; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1553–54 (2d Cir. 1983). Such testimony, however, cannot be considered reliable, substantial evidence if based on hypothetical questions posing an incomplete or otherwise defective articulation of RFC. *See Pardee v. Astrue*, 631 F. Supp.2d 200, 211–12 (N.D.N.Y. 2009) (citations omitted); *McAuliffe v. Barnhart*, 571 F. Supp.2d 400, 407 (W.D.N.Y. 2008).

When assessing residual functional capacity, administrative law judges must consider "all of the relevant medical and other evidence." *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities. Inevitably, they must weigh the credibility of that evidence.

*B.    Casey's Challenge*

Casey's second point of error asserts that ALJ Pitts's mental residual functional capacity finding[20] is defective. In three short pages of briefing, Casey proffers legal platitudes regarding various legal requirements for determining

---

[20]    ALJ Pitts's residual functional capacity finding is quoted in full in Section IV., *supra*.

residual functional capacity, principles governing evaluations of medical opinion and subjective testimony, and the overarching duty of administrative law judges to develop adequate evidentiary records. Casey generally infers that ALJ Pitts violated all. Her only specific arguments, however, relate to (a) ALJ Pitts's rejection of opinions expressed by Casey's treating psychiatrist and (b) ALJ Pitts's failure to include all limitations recommended by Casey's treating social worker, particularly her recommendation that Casey should not engage in work involving male supervisors.[21]

## C. Forensic Medical Opinions

The reviewable arguments cited above center around opinions expressed by two medical sources. Those opinions are summarized in this section:

### 1. Sara W. Nelson, M.D., treating psychiatrist

On October 14, 2011, Dr. Nelson completed a Mental Health Report (Employment) that noted Casey was under her care from December 2010 to present for bipolar disorder, borderline personality disorder, and post traumatic stress disorder (provisional). (T. 461). She opined that Casey was "unable to work for 3-6 months." (*Id.*). She also affirmed, however, that Casey could participate in other activities, including classroom training/education and rehabilitation retraining.[22] (T. 461-62).

---

[21] The Commissioner's brief rose to the bait and persuasively defended the adequacy of the record and ALJ Pitt's credibility assessment of subjective testimony. Dkt. No. 15, pp. 15-17. Because Casey proffered only general inferences, these issues are not discussed in this report.

[22] Casey's brief states that Dr. Nelson also opined that Casey has a moderately severe limitation with regard to responding appropriately to supervision and co-workers in a routine work situation and dealing with changes in a routine work setting. Dkt. No. 13, p. 21. This statement is inaccurate. Casey's brief cites to transcript pages 700-01, which is part of Administrative Exhibit 36F, a 12 page "Medical Disability Evaluation for Mental Disorders" that was prepared and electronically signed by a **different** medical source. (T. 696-707).

2. <u>Athena Curley, LMSW, treating social worker</u>

On February 19, 2010, Ms. Curley completed a Mental Health Report (Employment) stating that Casey was under her care from December, 2009, to present for major depressive disorder, recurrent, severe. (T. 447). Among other things, she opined that Casey was capable of working part-time for a female supervisor, working around and with people, having public contact, day/night or part-time, performing routine work, and training for a new occupation. (*Id.*). Ms. Curley also opined that Casey should not work at a high rate of speed, under a male supervisor, with responsibility for others, with responsibility for decisions, alone, with reliability for continued effort, or return to former occupation. (*Id.*). She recommended that Casey participate in other activities, including classroom training/education and rehabilitation retraining. (T. 447-48).

On March 7, 2012, Ms. Curley completed a Medical Disability Evaluation for Mental Disorder statement opining that Casey had "moderately severe" degree of impairment in her ability to relate to other people and constriction of interest of Casey. (T. 700). Additionally, she found that Casey has "severe" limitations in the following areas: respond appropriately to customary work pressure in a routine work setting; meet production, quality, and attendance standards; use the judgment necessary for most jobs." (T. 701). Moreover, she found Casey had "moderately severe" limitations in several areas including: ability to perform complex tasks (during an 8 hour workday); perform repetitive task (during an 8 hour workday); perform varied tasks (during an 8 hour workday); respond appropriately to supervision in a routine work situation;

respond appropriately to co-workers in a routine work situation; and deal with changes in a routine work setting.  (*Id.*).

3.    ALJ Pitts's Credibility Choices

ALJ Pitts afforded "little weight" to Dr. Nelson's opinion, observing that determinations of whether claimants are "unable to work" are ultimate issues reserved to the Commissioner.  (T. 26-27).  ALJ Pitts noted that Dr. Nelson's opinions were not supported by treating records and were inconsistent with other medical evidence including a consultative psychological evaluation and consultative internal medical examination of Casey.[23]  (T. 27).  He further discredited Dr. Nelson's opinion because it contained no specific function-by-function assessments of Casey's limitations.  (*Id.*).

ALJ Pitts, however,  gave "significant weight" to opinions expressed in Ms. Curley's  February 19, 2010, Mental Health Report (Employment) .  (T. 27).  As reported in Section VII.*C*.2, *supra*, Ms. Curley opined therein that Casey could work for a female supervisor, but not a male supervisor.  ALJ Pitts explained that he found corroborating "support in the record" for those conclusions. (T. 27).

D.    *Governing Legal Standards for Evaluating Medical Source Opinion*

Through  regulations  and  internal  policy  rulings,  the  Commissioner provides guidance for evaluating forensic medical opinions.  The Commissioner categorizes  medical  opinion  evidence  by  "sources"  described  as  "treating,"[24]

---

[23]    Multiple medical sources provided opinions in the evidence of record. Only those sources identified and challenged by Casey in her brief have been recited.

[24]    *See* 20 C.F.R. §§ 404.1502, 416.902 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").

"acceptable"[25] and "other."[26]  Evidence from all three sources can be considered when determining severity of impairments and how they affect individuals' ability to function.  *See* SSR 06–03p, 2006 WL 2329939, at *2.

A "treating physician rule" requires that administrative law judges defer and give controlling weight to opinions of treating sources regarding the nature and severity of impairments when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record."[27]

The Commissioner, however, need not grant "controlling weight" to a treating physician's opinion as to the ultimate issue of disability, as this decision lies exclusively with the Commissioner.  *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("treating physician's statement that the claimant is disabled cannot itself be determinative").  Moreover, for any good reason, administrative law judges can decline to afford them controlling weight.[28]  When controlling weight is not afforded, or when other medical-source opinions are evaluated, administrative judges must apply certain regulatory factors to determine how much weight, if any, to give such opinions: (1) length of treatment relationship and the frequency of examination; (2) nature and extent of treatment relationship; (3) evidence that

---

[25]     "Acceptable" medical sources are licensed physicians (medical or osteopathic doctors), psychologists, optometrists, podiatrists, and speech-language pathologists.  20 C.F.R. §§ 404.1513(a), 416.913(a).

[26]     "Other" sources are ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists.  20 C.F.R. §§ 404.1513(d), 416.913(d).

[27]     20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also* SSR 96-2p, 1996 WL 374188, at *1-2; *see also Morgan v. Colvin*, No. 14-991-cv, 592 Fed. App'x 49, 50 (2d Cir. 2015) (summary order); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

[28]     *See Williams v. Commissioner of Soc. Sec.*, 236 Fed. App'x 641, 643-44 (2d Cir. 2007)(summary order); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

supports a treating physician's report; (4) how consistent a treating physician's opinion is with the record as a whole; (5) specialization of a physician in contrast to condition being treated; and (6) any other significant factors. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Evidence from "other sources" is "important and should be evaluated on key issues such as impairment severity and functional effects." *See* SSR 06–03p, TITLES II AND XVI: CONSIDERING OPINIONS AND OTHER EVIDENCE FROM SOURCES WHO ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS, 2006 WL 2329939, at *2-3 (SSA Aug. 9, 2006). "Other" source opinions, even when based on treatment and special knowledge of an individual, never enjoy controlling weight *presumptions*. *Id.*; *see also* SSR 96–2p, TITLES II AND XVI: GIVING CONTROLLING WEIGHT TO TREATING SOURCE MEDICAL OPINIONS, 1996 WL 374188, at *1 (SSA July 2, 1996) (explaining controlling-weight factors). Nonetheless, in appropriate cases, "other source" opinion may even outweigh opinion of an "acceptable medical source." *See* SSR 06–03p, 2006 WL 2329939, at *2.

## E.    *Discussion and Application*

Although ALJ Pitts stated that he considered medical source opinion "in accordance with the requirements of 20 CFR 404.1527 and 416.927" (T. 22), his written decision does not reflect a formal six-factor analysis prescribed in those regulations. Courts conducting judicial review in social security cases, however, do not require perfect opinions or rigid, mechanical, formulaic applications of this test.[29]    Reviewing courts are more concerned with whether an

---

[29]    *See Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013) (summary order) ("no such slavish recitation of each and every factor [20 C.F.R. §§ 404.1527(c), 416.927(c)] [is required] where the ALJ's reasoning and adherence to the regulation are clear"); *see also Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004) (affirming ALJ opinion which did "not expressly acknowledge the treating physician rule," but where "the substance of the treating physician rule was not traversed").

administrative decision reflects that the entire record was considered, whether substance of a prescribed analytical protocol was traversed, whether the reasons underlying findings are expressed clearly enough for meaningful judicial review, and whether determinations are supported by substantial evidence.[30]

ALJ Pitts provided a well-reasoned explanation for affording Dr. Nelson's Mental Health Report little weight. Her opined limitations were not supported by her treating records; they were inconsistent with other evidence of record from mental health professionals; Dr. Nelson did not analyze Casey's capacity for work on a function- by- function basis; and Dr. Nelson provided only an ultimate-issue opinion. (T. 26-27). ALJ Pitts's articulated reasons for rejecting Dr. Nelson's opinions do not traverse the substance of the governing legal principles; they are susceptible to meaningful judicial review; and they are supported by substantial evidence. As such, no reversible error is apparent with respect to ALJ Pitts's credibility choice.

Casey's second argument that ALJ Pitts's residual functional capacity determination is defective (because it failed to include a nonexertional limitation precluding work with male supervisors) has merit. Casey correctly states that ALJ Pitts gave "significant weight" to social worker Curley's Mental Health Report which opined that Casey should not work for a male supervisor. (T. 27). ALJ Pitts amplified and embraced this credibility choice by expressly finding "support in the record for Social Worker Curley's conclusion that claimant could work for a female . . .but could not . . . work for a male supervisor. . . ." (*Id.*).[31] ALJ Pitts's residual functional capacity incorporates all limitations opined by

---

[30]    *See, e.g., Cichocki v. Astrue*, 729 F.3d 172, 177–78 (2d Cir.2013) (declining to adopt a *per se* rule that failure to provide a prescribed function-by-function analysis of residual functional capacity is grounds for remand).

[31]    The medical record contains treatment notes detailing Casey's abusive past (*i.e.*, being molested in high school, raped in 2001, and physically abused by her father and ex-husband), diagnosis of post-traumatic stress disorder related to these events, and suffering from flashbacks of violence and events not yet fully discernible.(T. 326-27, 366, 399, 401).

Curley *except* her opinion that she could not work with a male supervisor. ALJ Pitts does not provide any explanation for that omission, and the omission is contrary to what ALJ Pitts actually found.

This circumstance compels a conclusion that ALJ Pitt's articulation of Casey's residual functional capacity is defective because it does not include all limiting effects of Casey's mental impairments as established by relevant medical and other evidence as found by ALJ Pitts. This error, likely inadvertent, is harmless with respect to ALJ Pitts's Step 4 finding (that Casey cannot perform her past relevant work) because, even though based on a flawed residual functional capacity finding, it was favorable to Casey.[32] But it taints ALJ Pitts's Step 5 finding that a substantial number of alternative jobs that Casey can perform exist and are available in the national economy. VE Simone's testimony to that effect cannot be deemed reliable because it was given in response to a hypothetical question that did not pose all of Casey's limitations. A reviewing court cannot confidently conclude that VE Simone's testimony would have been the same, or that the ultimate decision would have been the same, absent the error. Specifically, the court has no basis for concluding that a substantial number of the representative jobs identified by VE Simone (laundry worker, ironer, office helper) exist in the national economy with female-only supervisors. Moreover, there is no evidentiary basis other than intuition or speculation for a reviewing court to determine whether and to what extent Casey's already-reduced occupational base might be further eroded by an additional limitation restricting her to female-only supervision.

In sum, ALJ Pitts's inadvertent omission of a residual functional capacity limitation precluding work under male supervision deprived Casey of a substantial right to have an administrative determination of her application for

---

[32]     Claimants who proven that their severe impairments preclude them from performing their past relevant work establish *a prima facie* case of disability. *See Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984).

social security disability benefits based on substantial evidence. Accordingly, the matter must be remanded for a redetermination of residual functional capacity and reconsideration of the Step 5 finding regarding alternative work. This is unfortunate, as ALJ Pitts's decision was excellent in all other respects.

## VIII.  Recommendation

The Commissioner's decision should be REVERSED and the case REMANDED pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings.

## IX.  Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___11___ day of _____July_____ 2015.

*Earl S. Hines*

Earl S. Hines
United States Magistrate Judge